IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| REBECCA ANN RIGGS, ) | Case No. 06-60346 |
| ) | |
| Debtors. ) | |

## AMENDED ORDER DENYING MOTION
## TO APPROVE REAFFIRMATION AGREEMENT

Debtor Rebecca Ann Riggs owns a 1993 Ford Explorer which is subject to a lien held by Super Cars, Inc.  The Debtor filed a Statement of Intention with her Petition, stating she intended to reaffirm the debt to Super Cars.  She then signed and filed a Reaffirmation Agreement for a debt of $4,822.69 with an annual percentage rate of 18.9% and requests that I approve the Agreement. Her attorney did not sign Part C of such Agreement.  For the reasons that follow, the request to approve the reaffirmation agreement is DENIED.

**DISCUSSION**

*The Debtor's Requirements Regarding*
*Property of the Estate Securing Consumer Debts*

Section 521(a)(2) provides as follows:

(2)  if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate –

> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

>   (B) within 30 days after the first date set for the meeting of creditors under section 341(a) or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
>
>   (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).[1]

Thus, unless the court fixes additional time, Chapter 7 debtors must, within the earlier of thirty days after the filing of the petition or on or before the meeting of creditors, file their statement of intention regarding property of the estate securing consumer debts, and must perform the intention with respect to such property within thirty days after the first date set for the meeting of creditors.

Prior to the enactment of the BAPCPA amendments,[2] there was significant dispute among courts as to whether § 521(a)(2)(A) provided debtors with four options as to retention or surrender of such personal property, the fourth being that debtors could simply retain the property and keep making payments.[3] That issue was effectively resolved, however, when Congress enacted § 326(h), § 521(a)(6), and § 521(d) as part of the BAPCPA amendments:

---

[1] 11 U.S.C. § 521(a)(2).

[2] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, S. 256, Pub.L. 109-8, 119 Stat. 23 (2005), applicable to cases filed after October 17, 2005.

[3] *Cf. Price v. Delaware State Police Fed. Credit* Union, 370 F.3d 362 (3d Cir. 2004) (holding that the fourth option existed); *In re Parker*, 139 F.3d 668 (9th Cir. 1998) (same); *In re Boodrow*, 126 F.3d 43 (2d Cir. 1997) (same); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543 (10th Cir. 1989) (same), *with In re Burr*, 160 F.3d 843 (1st Cir. 1998) (holding that debtors are limited to the three enumerated options); *In re Taylor*, 3 F.3d 1512 (11th Cir. 1993) (same); *Matter of Edwards*, 901 F.2d 1383 (7th Cir. 1990) (same).

Although the post-BAPCPA Code does not expressly prohibit the fourth "retain and pay" option, the Code now provides adverse consequences if the debtor does not perform one of the three specifically-enumerated options.  Thus, the Code now effectively limits debtors' options with regard to personal property to (1) surrender; (2) retention coupled with redemption; or (3) retention coupled with reaffirmation of the debt.[4]

First, § 362(h), to which § 521(a)(2)(C) expressly refers, provides:

(1)  In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) –

> (A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
>
> (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action , unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor

---

[4] *In re Anderson*, ___ B.R. ____, 2006 WL 2536585 at * 4 (Bankr. D. Del. Aug. 31, 2006); *see also In re Rowe*, 342 B.R. 341, 346 (Bankr. D. Kan. 2006) ("simply being current is not a valid defense to a stay relief motion . . . Retaining property and continuing to make regular payments is not one of the options available under the Bankruptcy Code.") (*quoting In re Faught*, 2006 WL 151884 (Bankr. W.D. Ky. Jan 19, 2006)) .

refuses to agree to the reaffirmation on such terms.[5]

Under this provision, the consequences of failing to timely choose one of the three enumerated options and timely perform the chosen option is that the automatic stay is terminated and the collateral is no longer property of the estate.[6]

In addition, Congress enacted § 521(a)(6) as part of the BAPCPA amendments. That section provides, in relevant part, that the debtor shall –

> (6) in a case under Chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either –
>
> > (A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or
> >
> > (B) redeems such property from the security interest pursuant to section 722.
>
> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law. . . .[7]

This section reiterates that debtors have only two options if they wish to retain the property: enter into a reaffirmation agreement, or redeem the property. Further, § 521(a)(6) provides

---

[5] 11 U.S.C. § 362(h).

[6] *In re Rowe*, 342 B.R. at 346 (citation omitted).

[7] 11 U.S.C. § 521(a)(6).

an additional consequence for failing to timely redeem or reaffirm, such that the consequences are now: "termination of the stay, abandonment (*i.e.,* the property is no longer property of the estate), and explicit permission for [the creditor] to proceed as permitted by state law."[8]  Section 521(a)(6) does not, however, authorize an immediate order that the debtor surrender the property to the creditor,[9] nor does it authorize an immediate foreclosure – if the creditor desires repossession of the collateral or foreclosure, it must proceed in accordance with state law.[10]

Ordinarily, under state law, a creditor cannot repossess property or commence a foreclosure unless the debtor has defaulted on its obligations.  In situations where the debtor wishes to retain-and-pay, the debtor is most likely current on its payment obligations.  However, many loan documents and security agreements contain clauses, known as *ipso facto* clauses, providing that the filing of a bankruptcy petition itself constitutes an event of default.  With regard to *ipso facto* clauses, § 521(d), also part of the BAPCPA amendments, provides:

> (d) If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), . . . nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such

---

[8]  *In re Steinhaus*, ___ B.R. ____, 2006 WL 2529631 at * 8 (Bankr. D. Idaho Sept. 1, 2006).

[9]  *Id.*; *In re Rowe*, 342 B.R. at 349-50 ("[t]he remedy is not removal of the property from the debtor, it is termination of the stay.").

[10]  *Id.* at *9.

> lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.[11]

Although other provisions of the Code still render *ipso facto* clauses unenforceable in bankruptcy,[12] the BAPCPA amendments make them enforceable when a debtor fails to timely redeem or reaffirm. The effect of the addition of § 521(d) to the Code has been described as follows:

> The significance of § 521(d)'s treatment of *ipso facto* clauses is simply that when a debtor fails to timely take the actions required by § 521(a)(6), or § 362(h)(1) or (2), the new statutory language eliminates limitations previously imposed by the Bankruptcy Code on the operation of *ipso facto* clauses. Section 521(d) does not create a new statutory remedy to be used by creditors, and does not write *ipso facto* clauses into contracts where none exist. Rather, it enables creditors to proceed under contractual default clauses without limitations imposed by the Bankruptcy Code. . . . Creditors still must ensure that the contract, and their efforts to enforce the terms in it, do not run afoul of any applicable state laws.[13]

In Missouri, § 408.552 of the Missouri Statutes governs the enforceability of default provisions in credit transactions made primarily for personal, family or household purposes, including sales of motor vehicles by retail sellers to retail buyers under a retail installment

---

[11] 11 U.S.C. § 521(d).

[12] *See, e.g.,* 11 U.S.C. §§ 365(e)(1) and 541(c)(1).

[13] *In re Donald*, 343 B.R. 524, 539 (Bankr. E.D. N.C. 2006) (*citing In re Rowe*, 342 B.R. at 351).

contract payable in one or more deferred installments.[14] That section provides:

> An agreement of the parties to a credit transaction concerning default by the borrower is enforceable only to the extent that:
>
> (1) The borrower fails to make a payment as required by agreement; or
>
> (2) The lender's prospect of payment, performance, or ability to realize upon the collateral is significantly impaired; the burden of establishing significant impairment is on the lender.[15]

Thus, if a debtor is current on its payments, even if the contract contains an *ipso facto* clause, such clause is enforceable only if the lender can establish that its prospect of payment, performance, or ability to realize upon the collateral is "significantly impaired." If the debtor is current on payments, and the only existing default is that the debtor filed for bankruptcy protection, it may well be difficult for a lender to establish that its prospects of payment and performance are significantly impaired merely due to the filing of a Chapter 7 bankruptcy case. This is so because most debtors are more likely to be able to make the payments post-bankruptcy than they were pre-bankruptcy, since the bankruptcy case usually results in the discharge of debts which the debtor would otherwise be obligated to service.[16] While the

---

[14] Mo. Stat. Ann. § 408.552 (governing enforceability of such default provisions); Mo. Stat. Ann. § 408.551 (providing that §408.552 shall apply to retail installment transactions made primarily for personal, family, or household purposes, under the Missouri Vehicle Time Sales Statute); Mo. Stat. Ann. § 365.020 (defining "retail installment transactions" under the Motor Vehicle Time Sales Statutes); and Mo. Stat. Ann. § 365.145 (providing that §§ 408.551 to 408.562 shall apply to vehicle retail installment transactions).

[15] Mo. Stat. Ann. § 408.552.

[16] *Accord, In re Rowe*, 342 B.R. at 350 (noting that, under Kansas' Uniform Consumer Credit Code, which contains similar language to Missouri's § 408.552, and the Kansas appellate

effect of a Chapter 7 discharge is that the lender will not be able to seek a deficiency judgment if it repossesses its collateral due to a later default, in most cases that is no loss to the lender, because the typical Chapter 7 debtor is insolvent and unable to pay such a judgment in any event.

In sum, if the debtor fails to perform his or her obligations under § 521(a)(2)(A), the consequences in bankruptcy court are that the stay is lifted, the property is no longer property of the estate, and the creditor may proceed to enforce its contract, including its *ipso facto* clause, as permitted by state law. Whether a creditor may enforce its *ipso facto* clause under Missouri law, so long as the debtor remains current on its payment obligations, should depend on whether such lender is able to demonstrate that its position has been sigificantly impaired by the filing of the bankruptcy case.

### *Requirements and Enforceability of Reaffirmation Agreements*

When, as in this case, the debtor timely chooses the third option, to retain the property and reaffirm the debt, § 524(c) comes into play. That section provides:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if –
>
> (1) such agreement was made before the granting of the

---

courts' narrow definition of "significant impairment," it is unlikely a Kansas court would find "significant impairment" when the debtor is current on payments, has stated an intent to remain current notwithstanding the bankruptcy, and there is no evidence that the secured party is not adequately secured).

8

    discharge under section 727, 1141, 1228, or 1328 of this title;

    (2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

    (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that

        (A) such agreement represents a fully informed and voluntary agreement by the debtor;

        (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

(C) the attorney fully advised the debtor of the legal effect and consequences of –

            (i) an agreement of the kind specified in this subsection; and
            (ii) any default under such an agreement;

    (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

    (5) the provisions of subsection (d) of this section have been complied with; and

    (6)    (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as –

            (i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
            (ii) in the best interest of the debtor.

> (B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.[17]

In sum, with certain exceptions regarding the debtor's real estate not applicable here, in order for a signed reaffirmation agreement to be enforceable by the creditor, a number of conditions must be met. First, it must be signed, filed, and approved before the debtor's discharge is entered. Second, the agreement must contain the many disclosures described in § 524(k). Most of the current standard reaffirmation forms filed in this district contain the necessary disclosures. Third, the debtor must not have rescinded the agreement prior to discharge. And fourth, either (i) the debtor must have been represented by an attorney during the course of negotiating the reaffirmation agreement or (ii) the court, after notice and hearing, must approve the agreement as not imposing an undue hardship on, and being in the best interest of, the debtor.

This fourth requirement presents the most difficulty. Part C of the standard reaffirmation agreement allows the attorney to attest that the debtor was fully informed and advised of the consequences of reaffirming the debt, that the debtor voluntarily entered into the agreement, and that the agreement does not impose an undue hardship on the debtor or a dependent of the debtor. If the attorney does not sign Part C of the reaffirmation agreement, the Court has no way to know whether the debtor was "represented by an attorney during the course of negotiating the reaffirmation agreement." Therefore, in order to approve a

---

[17] 11 U.S.C. § 524(c).

reaffirmation agreement that is not signed by an attorney, the court must conduct a hearing and determine that the reaffirmation agreement does not impose an undue hardship and is in the debtor's best interest.

In determining whether the agreement imposes an undue hardship on the debtor, the court starts with § 524(m), which was added by BAPCPA. That section provides:

> (m)(1) Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt. This presumption shall be reviewed by the court. The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement. No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before entry of the debtor's discharge.
>
> (2) This subsection does not apply to reaffirmation agreements where the creditor is a credit union . . . .[18]

The signed statement required under subsection (k)(6)(A) is found in Part D of the standard reaffirmation agreements filed in this district. According to Rule 4008, the amounts listed by the debtor in Part D should be the same as shown in the debtor's Schedules I and J. If there is a difference between the Part D amounts and Schedules I and J, the debtor must

---

[18] 11 U.S.C. § 524(m).

explain why there is a difference.[19]

Unless the creditor is a credit union, if Part D shows the debtor does not have enough income after expenses (including other debts to be reaffirmed) to make the payment on the submitted reaffirmation agreement, there is a presumption that reaffirming the debt will impose an undue hardship on the debtor. In order to rebut that presumption, the debtor must demonstrate, in writing, to the satisfaction of the court, how he or she will come up with the money each month to make the payment. Examples of this might be cutting costs in other categories of expenses or earning additional income through overtime or the like. If the court is not satisfied with the explanation, and there is a presumption that the payment imposes an undue hardship on the debtor, then the court cannot approve the agreement, regardless of whether the attorney signed off on it.

Assuming the § 524(m) presumption does not apply, the agreement is only enforceable if the attorney signs it, or if the Court approves it. In either situation, the issue is whether the agreement imposes an undue hardship and is in the best interests of the debtor. Thus, as to reaffirmation agreements (other than those involving a consumer debt secured by real property), the statute places attorneys in the uncomfortable position of deciding whether such reaffirmation imposes an undue hardship and whether it is in the client's best interests. Oftentimes, their clients desperately want to keep their cars, and to continue making regular payments. But in signing the reaffirmation agreement, attorneys expose their clients to a

---

[19] Fed. R. Bankr. P. 4008 [Interim].

potential deficiency judgment, which would be avoided if the reaffirmation agreement were held not to be enforceable.

In determining whether to sign off on a reaffirmation agreement, attorneys should be aware of the types of agreements which I have concluded should be subject to the closest scrutiny. First, I look at whether Part D shows an ability to make payments presently. If it does show that the debtor has the ability to make the payments, then the question is: In the event that circumstances in the future leave the debtor unable to make the payments, how devastating will a deficiency judgment be? This is primarily a function of two factors, the interest rate and the amount being reaffirmed. Here, the debt to be reaffirmed carries an interest rate of 18.9%. As a consequence, it will take more than two years for the debtor to repay the loan on a 1993 model car. If the car stops running at any time during that period, and the reaffirmation is enforceable, the debtor will then be obligated to Super Cars for the unpaid balance, and will need to be paying on another car as well. And, she will not be able to obtain a Chapter 7 discharge of the debt due to Super Cars until eight years after this case was filed.[20] For those reasons, I will not approve the Reaffirmation Agreement. As a rule of thumb, if a creditor on a personal property loan requires an interest rate over 10%, or if the amount to be reaffirmed is in excess of $20,000, attorneys should not be reluctant to leave it up to the Court to determine whether the agreement is in the debtor's best interests.

Pursuant to § 524(c), my declining to approve the Reaffirmation Agreement renders

---

[20] 11 U.S.C. § 727(a)(8).

13

it unenforceable, even though the Debtor signed it. Thus, Super Cars cannot seek a deficiency against the Debtor if she defaults. And, since the Debtor has performed her duty under § 521(a)(2) in filing her statement of intention and signing and filing the reaffirmation agreement within the prescribed time limits, § 362(h) and § 521(c)(6) are not applicable.[21] Once the discharge is entered, Super Cars may repossess the vehicle only if there is a payment or insurance default, or if its position has been significantly impaired. If Super Cars does later repossess the vehicle, any deficiency after sale will have been discharged in this bankruptcy case.

The request for approval of the reaffirmation agreement between debtor and Super Cars, Inc., is DENIED.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: October 12, 2006

Debtor's Attorney to serve parties not receiving electronic notice

---

[21] *But see In re Donald*, 343 B.R. at 540-41 (holding that a debtor may not avoid all of the consequences arising from §§ 362(h), 521(a)(6), and 521(d) by executing a reaffirmation agreement that is, or becomes, unenforceable).